# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ——————————————— ) | |
| **CHUN LIN JIANG, individually and** ) | |
| **on behalf of all others similarly situated,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No.** |
| ) | **22-11867-FDS** |
| **v.** ) | |
| ) | |
| **KOBE JAPANESE STEAKHOUSE, INC.;** ) | |
| **TOKYO II STEAK HOUSE, INC.;** ) | |
| **TOKYO III STEAK HOUSE, INC.;** ) | |
| **GUANGLONG LIN,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ——————————————— ) | |

## <u>MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS</u>

**SAYLOR, C.J.**

This case is about employee claims for unpaid wages and retaliation. Plaintiff Chun Lin Jiang formerly worked as a teriyaki chef at a number of Boston-area restaurants. He has brought suit, on behalf of himself and other similarly situated employees, against his former employer, Tokyo II Steakhouse, Inc. and its owner, Guanglong Lin, for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and the Massachusetts Wage Act, Mass Gen. Laws ch. 149, § 148. In addition, Jiang has sued other restaurants associated with Tokyo II on the theory that together the restaurants constituted a single integrated enterprise.

Defendants have moved to dismiss the complaint for improper claim-splitting and failure to state a claim upon which relief can be granted. For the following reasons, the motion will be granted in part and denied in part.

I.       **Background**

    A.       **Factual Background**

As set forth in the second amended complaint, defendant Guanglong Lin is the president of several corporations that operate four restaurants in the greater Boston area:  Tokyo II Steak House, Inc., in Saugus; Kobe Japanese Steakhouse, Inc., in Braintree; Shogun Japanese Steak House, Inc., in Cambridge; and Tokyo III Steak House, Inc., in Newton.  (Compl. ¶ 30).[1]

Chun Lin Jiang worked at Tokyo II as a Master Teriyaki Chef from approximately May 1, 2014, to June 3, 2021, although he would, on occasion, also work at Kobe.  (*Id.* ¶¶ 53-54).[2] According to the complaint, Jiang worked on average 68.73 hours per week, but was paid a flat rate of $3,200 per month.  (*Id.* ¶¶ 58, 60).  He was allegedly "never informed of his hourly pay rate or any tip deductions toward the minimum wage."  (*Id.* ¶ 62).  Nor did he receive a pay statement in his native language (Chinese) to provide him with that information.  (*Id.* ¶ 64).  The complaint also alleges that Jiang was not paid overtime for all hours worked in excess of 40 hours per week.  (*Id.* ¶ 61, 65).

Although Jiang never worked at Tokyo III, the complaint alleges that all defendant companies "operated jointly" as an "enterprise."  (*Id.* ¶ 41-47).  The companies all allegedly shared the same website, the same corporate officers and shareholders, and some of the same employees.  (*Id.*).  The complaint alleges that some employees were transferred between restaurants, and that some would work at multiple restaurants concurrently.  (*Id.* ¶ 45).

---

[1] For the sake of clarity, the Court will refer to the individual restaurants according to their corporate identities, as the defendant corporations do business under similar or identical names.  For example, the Tokyo II, Tokyo III, and Kobe restaurants all do business, according to the complaint, under the name "Tokyo Japanese Steak House."  (*See* Compl. ¶¶ 8-10).  Shogun, meanwhile, does business under the name "Bisuteki Tokyo Japanese Steak House."  (*Id.* ¶ 30).

[2] According to the complaint, Jiang was on hiatus from work at Tokyo II between January and June 2018 and March and June 2020.  (Compl. ¶ 55).

In addition to the claims concerning unpaid wages, the complaint alleges that defendant Lin "knowingly, willfully and maliciously retaliated against Plaintiff for filing this lawsuit" by accusing Jiang of various crimes, threatening to report him for those crimes, and reporting him to ICE. (*Id.* ¶ 66-77, 111). In addition, the complaint contends that Lin obtained a Harassment Prevention Order from the Quincy District Court "based on false and spurious statements" that Jiang had pointed a gun at him. (*Id.* ¶ 76).

### B.   <u>Procedural Background</u>

On October 22, 2021, Jiang filed suit on behalf of himself and other similarly situated employees. The complaint asserted claims against the four defendant restaurants, Guanglong Lin, and several other alleged shareholders and corporate officers of the restaurants. It asserted five causes of action against all defendants, including violations of Massachusetts wage laws and the FLSA. On July 22, 2022, this court dismissed all of the defendants, except Shogun, for Jiang's failure to effect service of process. (Docket No. 32, 17). It also dismissed the state-law claims against Shogun. (*Id.*).[3]

On November 2, 2023, plaintiff filed a new complaint against Kobe Japanese SteakHouse, Inc.; Tokyo II Steak House, Inc.; Tokyo III Steak House, Inc.; and Guanglong Lin. He then filed an amended complaint on February 9, 2023, and a second amended complaint on July 31, 2023. The second amended complaint alleges four claims. Count 1 asserts a claim against all defendants for failure to pay the minimum wage in violation of Mass. Gen. Laws ch. 149, § 148. Count 2 asserts a claim against all defendants for the nonpayment of overtime wages in violation of the FLSA. Count 3 asserts a claim against defendant Guanglong Lin for

---

[3] The remaining claims against Shogun were for failure to pay the minimum wage (Count 1) and failure to pay overtime compensation (Count 4), both in violation of the FLSA. On January 31, 2023, the Court granted summary judgment for Shogun on those claims and terminated plaintiff's case.

retaliation in violation of Mass. Gen. Laws ch. 149, § 148.  Count 4 asserts a claim against Lin for retaliation in violation of the FLSA.

On August 21, 2023, defendants moved to dismiss the second amended complaint.  Jiang filed his opposition on September 5, 2023, and defendants replied to the opposition on September 14, 2023.

## II.    Standard of Review

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III.    Analysis

Defendants have moved to dismiss all four counts of the complaint.  First, they contend that Counts 1 and 2 should be dismissed in their entirety because plaintiff "improperly split his claims."  (Docket No. 61, 1).  Second, they contend that Counts 1 and 2 should be dismissed as

to Tokyo III because plaintiff "fails to allege that he 'worked' for this 'employer' within the meaning of the Wage Act and FLSA." (*Id.* at 11).  Third, they contend that plaintiff's retaliation claims against Lin should be dismissed because they "do not meet the requirements to state a claim of retaliation" under either Mass. Gen. Laws ch. 149, § 148A or the FLSA.  (*Id.* at 15). The Court will address each of these issues in turn.

### A.   Claims for Failure to Pay the Minimum Wage and the Nonpayment of Overtime Wages (Counts 1 and 2)

#### 1.   Improper Claim Splitting

Defendants allege that Counts 1 and 2 should be dismissed in their entirety because plaintiff "improperly split his claims." (*Id.* at 1).  More specifically, they contend that there was a "parallel" filing made "in this same Court over one year ago—which involved the same parties, the same issues and based on the same nucleus of operative facts." (*Id.* at 6) (emphasis omitted). As a result, the claims here should be barred because of "traditional *res judicata* principles." (*Id.* at 9).

The doctrine of claim preclusion, or *res judicata*, prohibits parties from contesting issues that they have had a "full and fair opportunity to litigate." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  Claim preclusion "bars parties from relitigating claims that could have been made in an earlier suit, not just claims that were actually made." *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010).  To establish claim preclusion, a party must show that three elements have been satisfied:  "(1) [an] earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related." *Id.*

Here, defendants fail to satisfy the first element.  On July 22, 2022, the court dismissed the claims against defendants Tokyo II, Kobe, Tokyo III, and Lin in plaintiff's parallel action

pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process.  *See Jiang v. Tokyo II Steak House, Inc.*, 616 F. Supp. 3d 167 (D. Mass. 2022).  Unlike a dismissal for failure to state a claim under  Fed. R. Civ. P. 12(b)(6), a dismissal for insufficient service of process under Fed. R. Civ. P. 12(b)(5) is not a final judgment on the merits.  *See, e.g., United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 241 (1st Cir. 2004) ("It is well settled in this circuit that dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is a final decision on the merits."), *vacated on other grounds*, 913 F.3d 178; *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 736 (1st Cir. 2016) (citing *Karvelas* approvingly).  Counts 1 and 2 against all defendants in this action therefore will not be dismissed due to claim preclusion.

### 2.   Failure to State a Claim against Tokyo III

Next, defendants contend that Counts 1 and 2 should be dismissed under Fed. R. Civ. P. 12(b)(6) as to Tokyo III because plaintiff has "not pleaded that he was employee of Tokyo III under either federal or Massachusetts law."  (Docket No. 61, 11).  It is undisputed that plaintiff worked at Tokyo II and Kobe, but not at Tokyo III.  (Compl. ¶ 45(a)).  Plaintiff, however, alleges that Counts 1 and 2 should not be dismissed because "Tokyo Steak House III is part of the *integrated enterprise* between the corporate defendants in this case and therefore an employer to plaintiff."  (Docket No. 62, 8) (emphasis added).

The FLSA provides broad and comprehensive coverage of employees.  *United States v. Rosenwasser*, 323 U.S. 360, 362 (1945).  Indeed, the Supreme Court has suggested that "[a] broader or more comprehensive coverage of employees . . . would be difficult to frame."  *Id.*  All the same, the statute's reach is not without limits.  The FLSA applies only to those who are "employed" by an "employer."  29 U.S.C. § 207(a)(1).  To "employ" is defined as "to suffer or permit to work."  29 U.S.C. § 203(g).  An "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

Liability under the FLSA hinges on the existence of an employer-employee relationship.

Similarly, to state a claim under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, a plaintiff must allege that (1) he was an employee under the statute, (2) his form of compensation constitutes a wage under the statute, and (3) the defendants violated the Act by not paying his wages in a timely manner.  *Stanton v. Lighthouse Fin. Servs.*, Inc., 621 F. Supp. 2d 5, 10 (D. Mass. 2009).  An employee is any person "employed for hire by an employer," and an employer is  "any person acting in the interest of an employer directly or indirectly."  Mass Gen. Laws ch. 149 § 1.

As the Court explained in its memorandum and order on defendant's motion for summary judgment in *Jiang v. Shogun Japanese Steakhouse Inc.*, the relevant test for determining whether liability may be imposed on a non-employing entity is the "economic-reality" test, not the "integrated-enterprise" test.  (*See Shogun*, Civil Action No. 21-11732, Docket No. 98).

The First Circuit in *Baystate* provided at least four factors relevant to that analysis: whether the "alleged employer (1) had the power to hire and fire the employee[]; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records."  *Baystate Alt. Staffing Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998).  It "is the totality of the circumstances, and not any one factor, [that] determines whether a worker is the employee of a particular alleged employer." *Id.* at 676.

Because the complaint here does not plead that any of the *Baystate* factors are met, it fails to state a claim against Tokyo III.  Plaintiff does not contend that anyone employed by Tokyo III had the power to hire or fire him, nor that Tokyo III controlled his work schedule or the conditions in other restaurants.  There are no allegations that Tokyo III ever paid him, or that any

records of his purported employment are held by Tokyo III.

Plaintiff's primary asserted link between Tokyo III and his direct employers is that Guanglong Lin controlled many operations at each of the restaurants that he partly owned. (*Id.* ¶¶ 30, 41). Without more, that is not enough to establish an employer-employee relationship between Tokyo III and plaintiff. Mere common ownership, or even simultaneous control of multiple entities, is not sufficient to establish that any of those entities can be considered an "employer."

The only other facts that plaintiff contends support his claim appear to focus on the alleged sharing of employees and a website between the different restaurants. (*Id.* ¶¶ 44-45). But none of those factual assertions—even if true—support a finding that the "economic reality" of the situation was that Tokyo III was plaintiff's employer; at most, they show only that it may have shared some connection to other entities that may in turn have qualified for that status.

Accordingly, the complaint does not set forth sufficient facts to plausibly allege that defendant Tokyo III was his employer within the meaning of the FLSA or the Massachusetts Wage Act. The motion to dismiss Counts 1 and 2 as to Tokyo III will therefore be granted.

**B.**   **Claims for Retaliation (Counts 3 and 4)**

Finally, defendants contend that the complaint fails to state a claim for retaliation under either Mass. Gen. Laws ch. 149, § 148 or the FLSA for at least two reasons. First, defendants contend that "the conduct about which Plaintiff complains does not constitute an adverse employment action." (Docket No. 61, 15). Second, they contend that "Plaintiff has failed to allege sufficient facts to demonstrate any nexus between his alleged protected activity and the allegedly retaliatory acts." (*Id.*).

The FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be

8

instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding . . . ."  29 U.S.C. § 215(a)(3).

The Massachusetts Wage Act also includes an anti-retaliation provision, which provides that "[n]o employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter."  Mass. Gen. Laws ch. 149, § 148A.  The Act further provides that "[a]ny employer who discharges or in any other manner discriminates against any employee because such employee has made a complaint . . . or has instituted . . . any proceeding . . . , or has testified or is about to testify in any such proceedings, shall have violated this section."  *Id.*

There are three elements to a prima facie retaliation claim:  "(1) the plaintiff engaged in statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in the protected activity."  *Blackie v. State of Me.*, 75 F.3d 716, 722-23 (1st Cir. 1996).  To satisfy the third element, there must be "a causal connection . . . between the protected conduct and the adverse action."  *Id.* at 723 (internal quotation marks and citations omitted).  Those elements are the same under both the FLSA and Massachusetts Wage Act, and therefore the Court will consider the issues together.  *See Travers v. Flight Servs. & Sys., Inc.*, 808 F.3d 525, 531 (1st Cir. 2015); *see also Wang v. Palmisano*, 51 F. Supp. 3d 521, 538 (S.D.N.Y. 2014) (stating that "[a] plaintiff must allege similar facts [to FLSA retaliation claim] to state a claim under Massachusetts state law, [ch. 149, § 148A.]").

For a retaliation claim to survive a motion to dismiss, "[a]lthough a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial . . . she need not plead facts sufficient to establish a prima facie case."  *Rodríguez-Vives v. P.R. Firefighters Corps of P.R.*, 743 F.3d 278, 286 (1st Cir. 2014) (quoting *Rodríguez-*

*Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013)); *see also Wang*, 51 F. Supp. 3d at 538 (stating that "plaintiff is not required to specifically plead every element of a prima facie case to survive a motion to dismiss [but must still] . . . plead facts sufficient to render his or her retaliation claim facially plausible under *Twombly* and *Iqbal*") (internal quotation marks and citations omitted).

Here, the question is whether the complaint alleges facts that, taken as true and viewed in the light most favorable to plaintiff, plausibly suggest claims of retaliation. The complaint alleges that "[o]n August 25, 2022, at 8:34 AM, after Plaintiff filed his case for the related lawsuit *Jiang v. Tokyo II Steak House, Inc.*, No. 21-cv-11732 (D. Mass.) ('*Tokyo*')," defendant Lin texted plaintiff and "falsely accused Plaintiff of various crimes (including distribution of illegal substances, pimping, and money laundering), and . . . threatened to report Plaintiff for the crimes to the attorney general as a result of the 'frivolous' lawsuit." (Compl. ¶ 30). Plaintiff also alleges that Lin sent other threatening text messages containing false accusations and ultimately acted on those threats by making a "false report" to the police that plaintiff had pointed a gun at him on January 21, 2023. (*Id.* v¶ 71-76). Finally, plaintiff alleges that Lin reported him to ICE "on or about January 23, 2022—about three months after the commencement of *Tokyo* and at about the time Lin and Restaurants appeared in and moved to dismiss *Tokyo*." (*Id.* at 77).

Without question, those allegations are sufficient to allege plausible claims of retaliation. The Court will deny the motion to dismiss to the extent that it seeks dismissal of Counts 3 and 4.

**IV.** **Conclusion**

For the foregoing reasons, defendants' motion to dismiss is GRANTED pursuant to Fed. R. Civ. P. 12(b)(6) as to Counts 1 and 2 against defendant Tokyo III Steak House, Inc., and otherwise DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated:  February 5, 2024