UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| CHUN LIN JIANG, individually and ) | |
| on behalf of all others similarly situated, ) | |
| ) | |
| **Plaintiff,** ) | Civil Action No. |
| ) | 22-11867-FDS |
| v. ) | |
| ) | |
| KOBE JAPANESE STEAKHOUSE, INC.; ) | |
| TOKYO II STEAK HOUSE, INC.; ) | |
| TOKYO III STEAK HOUSE, INC.; and ) | |
| GUANGLONG LIN, ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, PLAINTIFF'S MOTION TO COMPEL DISCOVERY, AND PLAINTIFF'S
MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION**

SAYLOR, C.J.

This is a case involving employee claims for unpaid wages. Plaintiff Chun Lin Jiang

formerly worked as a teriyaki chef at a number of Boston-area restaurants. He has brought suit,

on behalf of himself and other similarly situated employees, against his former employer, Tokyo

II Steakhouse, Inc. and its owner, Guanglong Lin, for violations of the Fair Labor Standards Act,

29 U.S.C. § 201, *et seq.*, and the Massachusetts Wage Act, Mass Gen. Laws ch. 149, § 148,

including claims for retaliation. In addition, Jiang has sued another company associated with

Tokyo II, Kobe Japanese Steakhouse, Inc., on the basis of his occasional work at a different

restaurant.

Defendants have moved for summary judgment on all claims, and plaintiff has pending

motions to compel discovery and for conditional certification of a collective under the FLSA.

For the following reasons, the motion for summary judgment will be granted as to the claims against Kobe Japanese Steakhouse, Inc., and denied as to the remaining claims; the motion to compel will be granted in part and denied in part; and the motion for conditional collective certification will be denied.

## I.    Background

The following facts are presented in the light most favorable to the non-moving party (plaintiff) and are undisputed unless otherwise noted.

### A.    Factual Background

#### 1.    The Parties' Relationship

Guanglong Lin is the president and part owner of Tokyo II Steak House, Inc. and Kobe Japanese Steakhouse, Inc. (Def. SUMF ¶ 1; *see* Saunders Dec. Ex. 2 at 25). The companies operate the Tokyo II Steak House in Saugus, Massachusetts, and Kobe Japanese Steakhouse in Braintree, Massachusetts, respectively. (Def. SUMF ¶ 1; *See* Def. Ans. ¶¶ 18, 22).

Chung Lin Jiang worked as a Teppen Yaki chef at Tokyo II from June 2014 to June 3, 2021, except for the periods from January 2018 through May 2018 and March 17, 2020, through June 17, 2020. (Def. SUMF ¶ 3; Jiang Dep. at 42, 62, 65).

Jiang was initially hired by Lin to work at Kobe in May 2014. (Troy Decl. Ex. 7 at 21-23). He worked at Kobe for "about one and a half months," and was then reassigned by Lin to work at Tokyo II. *Id.*

While at Tokyo II from July 1, 2018, to March 16, 2020, Jiang worked approximately 65 hours per week, and from June 18, 2020, to June 3, 2021, he worked between 66 and 67 hours per week. (Jiang Aff. ¶¶ 6, 9). He maintained the same hours during every week that he worked. (Troy Decl. Ex. 5 at 62). At the beginning of 2020, he was paid a flat monthly rate of $3,200,

and at some point that year the rate was increased to $3,400.  (Troy Decl. Ex. 5 at 58, 62-63).[1]
He was paid in cash and never received any tax forms from Tokyo II.  (Troy Decl. Ex. 5 at 33-34).  Throughout this time, he was primarily responsible for working at the teriyaki station and occasionally assisting with the hot pot and washing dishes.  (Troy Decl. Ex. 7 at 57).  There is no other evidence in the record concerning his work responsibilities or expectations.[2]

Jiang's wife, Yao Mei Liu, was a director of Tokyo II Steak House, Inc., during the events giving rise to this case.  She also owned 20% of its stock until she transferred her shares to Tongmei Lin on September 2, 2021.  (Troy Decl. Ex. 1, Ex. 2).  Liu worked at the Tokyo II restaurant during that time, but the scope of her responsibilities is disputed.[3]

Jiang was ultimately directed by Lin to leave the premises of Tokyo II on June 3, 2021, and his employment at the restaurant ended on that date.  (Troy Decl. Ex. 7 at 37-38, 101-02).  The events directly leading up to Jiang's dismissal are disputed.

### 2. Jiang's Initial Suit and Conflict with Lin

On October 22, 2021, Jiang filed suit against Lin and four of Lin's restaurants, asserting claims under the Massachusetts Wage Act and FLSA.  *Jiang v. Tokyo II Steakhouse, Inc., et al.*, No. 21-cv-11732-FDS ("*Jiang I*").  On August 25, 2022, Lin texted Jiang seeking to "settle out of court," while also accusing Jiang of "selling drugs" and "pimping," suggesting that Jiang was at "risk [of] going to jail," and referring to the possibility of "apply[ing] to the court" and "to [the] ADA . . . to investigate [Jiang's] criminal acts."  (Troy Decl. Ex. 4).

---

[1] Jiang testified that he would receive about $10 to $30 in tips per month.  (Troy Decl. Ex. 5 at 59).

[2] Lin disputes that Jiang performed any work at all for Tokyo II or Kobe.  (Lin Decl. ¶ 6, ECF No. 82) ("[Jiang] did not perform work 'off the clock' or otherwise for[] Tokyo II or Kobe.")

[3] Lin contends that Liu was the general manager of Tokyo II, while Jiang contends that she was not. (Saunders Decl. Ex. 1 at 38, Ex. 2 at 27-28).  However, in other testimony Jiang refers to his wife as "the manager." (Troy Decl. Ex. 7 at 63) (Jiang referring to Lin as "the boss" and his wife as "the manager").

On January 21, 2023, after service of the summons and complaint in this case, Lin texted Jiang accusing him of "blocking" Lin in a parking lot, brandishing a gun, and making Lin feel threatened. Lin indicated that he would "report [Jiang] to the police" and "apply for a restraining order." *Id.* Lin indeed did file for a protective order, which was denied. (Troy Decl. Ex. 6 at 68-69). Jiang contends that in a phone call, Lin threatened to report him to ICE and that Lin distributed photos to co-workers of Jiang "in custody at immigration." (Troy Decl. Ex. 5 at 72-76).

### 3.  Other Employees

The following additional facts are derived primarily from an affidavit submitted by Jiang in support of his motion for conditional collective certification.[4]

Jiang alleges that a group of 28 individuals worked for Lin and were "similarly situated" to him in that they were not paid overtime wages despite working more than 40 hours per week. (Jiang Aff.). Of those 28 individuals, 19 worked exclusively at Tokyo II, and nine worked at more than one of Lin's restaurants. *Id.* Some individuals were identified by nickname, and some only identified by job title; their job titles included waitstaff, dishwashers, a bartender, busboys, various types of chef, and a host. *Id.*

### B.  Procedural Background

On October 22, 2021, Jiang filed suit on behalf of himself and other similarly situated

---

[4] When considering motions to conditionally certify collective actions pursuant to 29 U.S.C. § 216, courts consider "the pleadings, declarations, or other limited evidence to assess whether the 'proposed members of a collective are similar enough to receive notice of the pending action.'" *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 89 (1st Cir. 2022) (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018); *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 436 (5th Cir. 2021)); *see also Trezvant v. Fidelity Emp'r Servs. Corp.*, 434 F. Supp. 2d 40, 43 (D. Mass. 2006) (considering "the pleadings and any affidavits which have been submitted"); *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th Cir. 2001). "At this stage, however, courts do not need 'to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented.'" *Trezvant*, 434 F. Supp. 2d at 43 (quoting *Kalish v. High Tech. Inst., Inc.*, 2005 WL 1073645, at *2 (D. Minn. Apr. 22, 2005)).

employees.  The complaint asserted claims against four defendant restaurants, Guanglong Lin, and several other alleged shareholders and corporate officers of the restaurants.  It asserted five causes of action against all defendants, including violations of Massachusetts wage laws and the FLSA.  On July 22, 2022, this Court dismissed the claims against all of the defendants except Shogun for failure to effect service of process.  (ECF No. 32, 17).  It also dismissed the state-law claims against Shogun.  (*Id.*).[5]

On November 2, 2023, Jiang filed a new complaint against Kobe Japanese SteakHouse, Inc.; Tokyo II Steak House, Inc.; Tokyo III Steak House, Inc.; and Guanglong Lin.  He filed an amended complaint on February 9, 2023, and a second amended complaint on July 31, 2023. The second amended complaint alleges four claims.  Count 1 asserts a claim against all defendants for failure to pay the minimum wage in violation of Mass. Gen. Laws ch. 149, § 148. Count 2 asserts a claim against all defendants for the nonpayment of overtime wages in violation of the FLSA.  Count 3 asserts a claim against Lin for retaliation in violation of Mass. Gen. Laws ch. 149, § 148.  Count 4 asserts a claim against Lin for retaliation in violation of the FLSA.

Defendants moved to dismiss the second amended complaint, and on February 4, 2024, the Court dismissed Counts 1 and 2 against defendant Tokyo III, finding that the complaint had failed to plausibly allege that Tokyo III was Jiang's employer under the FLSA or Wage Act. Only Lin, Tokyo II Steak House, Inc., and Kobe Japanese SteakHouse, Inc. remain as defendants.

Jiang has moved for conditional certification of a collective action under section 216(b) of the FLSA and to compel discovery responses from defendants.  Defendants have moved for

---

[5] The remaining claims against Shogun were for failure to pay the minimum wage (Count 1) and failure to pay overtime compensation (Count 4), both in violation of the FLSA.  On January 31, 2023, the Court granted summary judgment for Shogun on those claims and terminated the case.

summary judgment as to all claims.

## II.    Summary Judgment

### A.    Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted).  In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party.  *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted).  The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

### B.    Analysis

Defendants have moved for summary judgment as to all four counts of the complaint. First, they contend that the claims against Kobe are time-barred.  Second, they contend that Counts 1 and 2 against Tokyo II fail because Jiang "was never an employee of Tokyo II under . . . the Wage Act or FLSA."  (Def. Mem. at 5).  Defendants further contend that even if Jiang were an employee, he was "paid all the overtime he was due" under the FLSA, thus

negating any breach of the FLSA overtime requirements. (*Id.* at 7). Finally, defendants contend that the retaliation claims, Counts 3 and 4, must fail because the actions purportedly taken by Lin do not amount to adverse employment action and were not sufficiently related to Jiang's engagement in protected activity. (*Id.* at 7-9). The Court will address each of the issues in turn.

### 1.     Claims Against Kobe

The claims against Kobe are clearly time-barred. "Under the [FLSA], an action for unpaid compensation must commence within two years after a cause of action accrues and three years if the cause of action arises out of a willful violation." *Trezvant v. Fid. Emp. Servs. Corp.*, 434 F. Supp. 2d 40, 51 (D. Mass. 2006) (citing 29 U.S.C. § 255); *see also McLaughlin v. Boston Harbor Cruises, Inc.*, 2006 WL 199862, at *1 (D. Mass. July 17, 2006). Similarly, a person asserting violations of the Wage Act must do so "within 3 years after the [alleged] violation." Mass. Gen. Laws ch. 149, § 150.

For the claims against Kobe to be timely, they would need to arise out of violations occurring on November 2, 2019, or later. But Jiang testified that he worked at Kobe for only "one and a half months" in 2014, before being reassigned to Tokyo II. (Troy Decl. Ex. 7 at 21). Indeed, earlier in this case, Jiang agreed to dismiss his claims against Kobe voluntarily, stating that he had in fact worked for Kobe "outside the statute of limitations." (Collective Certification Reply Mem. at 2). Although Jiang has maintained that during his time at Tokyo II, he would occasionally be dispatched to Kobe, (Jiang Decl. ¶ 20), he has not directly disputed the defense assertion that he was not an employee of Kobe within the limitations period. Nor has he seriously asserted that his post-2014 relationship with Kobe satisfied any of the *Baystate* factors for establishing employment status, and he has not offered any evidence controverting defendants' assertions to the contrary. Accordingly, there is no genuine dispute on this point and the claims against Kobe are time-barred.

2.    **Claims for Failure to Pay the Minimum Wage and the Nonpayment of Overtime Wages (Counts 1 and 2)**

Defendants next contend that Jiang was not an employee under the Massachusetts Wage Act or FLSA and that therefore his claims under those laws must fail.

The FLSA provides broad and comprehensive coverage of employees. *United States v. Rosenwasser*, 323 U.S. 360, 362 (1945). Indeed, the Supreme Court has suggested that "[a] broader or more comprehensive coverage of employees . . . would be difficult to frame." *Id.* All the same, the statute's reach is not without limits. The FLSA applies only to those who are "employed" by an "employer." 29 U.S.C. § 207(a)(1). To "employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203(g). An "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Liability under the FLSA hinges on the existence of an employer-employee relationship.

Similarly, to state a claim under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, a plaintiff must allege that (1) he was an employee under the statute, (2) his form of compensation constitutes a wage under the statute, and (3) the defendants violated the Act by not paying his wages in a timely manner. *Stanton v. Lighthouse Fin. Servs.*, Inc., 621 F. Supp. 2d 5, 10 (D. Mass. 2009). An employee is any person "employed for hire by an employer," and an employer is "any person acting in the interest of an employer directly or indirectly." Mass Gen. Laws ch. 149, § 1.

As the Court explained in its memorandum and order on defendant's motion for summary judgment in *Jiang v. Shogun Japanese Steakhouse Inc.*, the relevant test for determining whether liability may be imposed on a non-employing entity is the "economic-reality" test, not the "integrated-enterprise" test. (*See Shogun*, Civil Action No. 21-11732, ECF No. 98).

The First Circuit in *Baystate* described at least four factors that are relevant to that

analysis:  whether the "alleged employer (1) had the power to hire and fire the employee[]; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records."  *Baystate Alt. Staffing Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998).  It "is the totality of the circumstances, and not any one factor, [that] determines whether a worker is the employee of a particular alleged employer."  *Id.* at 676.

In sworn deposition testimony, Jiang stated that Lin hired him, fired him; assigned him work; arranged his work schedule; was involved in adjusting his salary; and was at least partly responsible for distributing his compensation.  (Troy Decl. Ex. 5 at 21, 42-44, 56, 69; Ex. 7 at 21, 62-63).  Lin disputes much of this in his own sworn filings and deposition testimony, and asserts that if Jiang were an employee, he would have received tax documents, as did other employees. Directly competing testimony from opposing parties as to a material matter will not, of course, support a grant of summary judgment in either party's favor, and can only be resolved by a jury.[6]

Defendants contend, however, that even if Jiang was an employee, his FLSA claim must

---

[6] Defendants also argue that Jiang was not an employee, but a shareholder.  That argument does not require a different result for two reasons:  (1) owning shares of a company does not *per se* preclude someone from also being an employee of that company; and (2) the undisputed evidence shows that the relevant shares were held by Jiang's wife, not Jiang, and defendants provide no basis for imputing their ownership to Jiang as a matter of law.

In addition, much of defendants' argument, and much of the record, appears to be directed at undermining the claim of individual FLSA liability against Lin by challenging his status as an employer of Jiang.  While there may be a genuine dispute concerning Jiang's status as an employee, if it is ultimately shown that he was an employee, it follows ineluctably that Lin amounted to his employer under the FLSA.  In other words, challenging the employer-employee relationship from the angle of Lin's status as an employer is unlikely to be fruitful.  The First Circuit has identified the circumstance of "two individuals who 'together were President, Treasurer, Secretary and sole members of the Board of Directors,'" as a paradigmatic example of employers subject to individual liability under the FLSA.  *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 48 (1st Cir. 2013) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)).  It has also "identified an ownership stake as highly probative of an individual's employer status," observing that "the company's profits inure directly to an individual with an ownership interest, meaning that the individual 'employs' the worker in a very concrete and literal sense."  *Id.*  It is undisputed that Lin is the president, treasurer, secretary, and a director of Tokyo II.  (Troy Decl. Ex. 1 at 33-34).  He is also an owner of 40% of Tokyo II's shares.  (*Id.* Ex. 6 at 21).  Thus, Lin appears to precisely fit the outline of an employer subject to individual FLSA liability.

fail because the amount that he was paid satisfied any overtime-compensation requirements under the law.  (Def. Mem. at 6-7).  On the record before the Court, however, that contention also cannot be resolved at summary judgment.

Defendants' argument assumes that Jiang's flat monthly rate included overtime compensation.  However, there is no evidence of any such understanding between Lin and Jiang, and absent an explicit agreement to that effect, it is presumed that a flat salary is only intended to compensate the first 40 hours per week that an employee works.  *See Giles v. City of New York*, 41 F. Supp. 2d 308, 314 (S.D.N.Y. 1999) ("Unless the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate, courts do not deem weekly salaries to include the overtime premium for workers regularly logging overtime, but instead hold that weekly salary covers only the first 40 hours.") (collecting cases); *Dunlop v. Vita-Mart of Cambridge, Inc., et al.*, 1975 WL 1209, at *2 (D. Mass. Oct. 31, 1975) ("[A]greement for a fixed weekly pay for more than forty hours of work per week only complies with [the FLSA] . . . if there is an explicit understanding between employer and employee as to regular and overtime hourly rates.").  The intended scope of Jiang's compensation has not been definitively established by either side, and thus it remains a material dispute for the jury to decide.

Overall, the record evidence is quite bare, consisting almost entirely of frequently unclear and conflicting deposition testimony and sworn declarations by the parties themselves.  It seems that record-keeping by the employer was scarce, and both parties appear to be reluctant to involve other individuals who might provide relevant witness testimony.  In any event, on this record, summary judgment is not appropriate.

### 3.    Claims for Retaliation (Counts 3 and 4)

Defendants next contend that the retaliation claims must fail because the conduct alleged does not rise to the level of "adverse employment action," and at least some of the allegedly

retaliatory conduct did not occur in response to protected activity by Jiang.

The FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding . . . ."  29 U.S.C. § 215(a)(3). [7]

The Massachusetts Wage Act also includes an anti-retaliation provision, which provides that "[n]o employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter."  Mass. Gen. Laws ch. 149, § 148A.  The Act further provides that "[a]ny employer who discharges or in any other manner discriminates against any employee because such employee has made a complaint . . . or has instituted . . . any proceeding . . . , or has testified or is about to testify in any such proceedings, shall have violated this section."  *Id.*

There are three elements to a *prima facie* retaliation claim:  "(1) the plaintiff engaged in statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in the protected activity."  *Blackie v. State of Me.*, 75 F.3d 716, 722-23 (1st Cir. 1996).  To satisfy the third element, there must be "a causal connection . . . between the protected conduct and the adverse action."  *Id.* at 723 (internal quotation marks and citations omitted).  Those elements are the same under both the FLSA and the Massachusetts Wage Act, and therefore the Court will consider the issues together.  *See Travers v. Flight Servs. & Sys., Inc.*, 808 F.3d 525, 531 (1st Cir. 2015); *see also Wang v. Palmisano*, 51 F. Supp. 3d 521, 538 (S.D.N.Y. 2014) (stating that "[a] plaintiff must allege

---

[7] "[T]he FLSA protects former employees from retaliation, and not merely current ones."  *Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (1st Cir. 2008) (citing *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306 (5th Cir. 1972)).

similar facts [to FLSA retaliation claim] to state a claim under Massachusetts state law, [ch. 149, § 148A.]").

Jiang contends that Lin has retaliated against him for bringing suit in *Jiang I* and for bringing the present case, both of which assert claims under the FLSA.  It is beyond dispute that filing suit under the FLSA amounts to statutorily protected activity.  29 U.S.C. § 215(a)(3).

Defendants' core contention is that the retaliation claims fail at the second prong of the *prima facie* case—that is, Jiang has not shown any "adverse employment action" taken by defendant against him.  The standard for determining whether conduct "rises to [the level of adverse action] is an objective one."  *Su v. F.W Webb Co.*, 677 F. Supp. 3d 7, 24 (D. Mass. 2023) (collecting cases).  Fundamentally, action taken by an employer is adverse if it "could well dissuade a reasonable worker from making or supporting a charge" under the FLSA.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (Title VII employment retaliation case); *see Serapion v. Martinez*, 119 F.3d 982, 985 (1st Cir. 1997) ("We regard Title VII . . . and FLSA as standing *in pari passu* and [treat] judicial precedents interpreting one such statute as instructive in decisions involving another.").  Viewing the facts in the light most favorable to Jiang, the actions taken by defendant—including threats to file false reports with law enforcement and report plaintiff to immigration authorities—could "well dissuade a reasonable worker" from bringing suit under the FLSA.  *White*, 548 U.S. at 57.  Thus, the retaliation claims do not fail at the second prong.

Finally, defendants argue that Jiang has failed to sufficiently show a nexus between the protected activity and the allegedly adverse actions.  Defendants point to Lin's testimony that he had already reported Jiang's alleged criminal activity to the authorities in June 2021, prior to the filing of the suit.  (Def. Mem. at 8).  But as defendants themselves appear to recognize, such

timing would only mean "*that* action cannot be considered retaliation." (*Id.*) (emphasis added). However, the retaliation claims are based upon multiple other actions taken by defendant after Jiang brought suit. And the fact that an employer made reports to the authorities in the past does not erase the retaliatory impact of that same employer's threats to make reports to the authorities in the future—if anything, such a history would likely enhance the impact of the later threats.

Ultimately, "the question is not whether a reasonable jury could find that [the employer would have taken adverse action] even in the absence of retaliatory intent. Rather, the question pertinent to . . . summary judgment is whether no reasonable jury could find otherwise." *Travers v. Flight Servs. & Sys., Inc.*, 737 F.3d 144, 148 (1st Cir. 2013). On this record, viewing the facts in the light most favorable to the non-moving party, a reasonable jury could find that defendant took adverse action against Jiang "as a reprisal for having engaged in . . . protected activity," and thus the retaliation claims will survive summary judgment. *Blackie*, 75 F.3d at 723.

## III.    Motion to Compel

### A.    Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be

obtained from some other source that is more convenient, less burdensome, or less

13

expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the

information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

Fed R. Civ. P. 26(b)(2)(C).

"On a motion to compel, '[t]he party seeking information in discovery over an

adversary's objection has the burden of showing its relevance.'" *Controlled Kinematics, Inc. v.*

*Novanta Corp.*, 2019 WL 3082354, at *2 (D. Mass. July 15, 2019) (alteration in original)

(quoting *Johansen v. Liberty Mut. Grp., Inc.*, 2017 WL 6045419, at *1 (D. Mass. Dec. 6, 2017)).

"At the discovery stage, relevance should be 'broadly construed,' and information should be

deemed 'discoverable if there is any possibility it might be relevant to the subject matter of the

action.'" *Nosalek v. MLS Prop. Info. Network, Inc.*, 2022 WL 4815961, at *4 (D. Mass. Oct. 3,

2022) (quoting *Cherkaoui v. City of Quincy*, 2015 WL 4504937, at *1 (D. Mass. July 23, 2015)).

"[B]ecause 'discovery itself is designed to help define and clarify the issues,' the limits set forth

in Rule 26 must be 'construed broadly to encompass any matter that bears on, or that reasonably

could lead to other matters that could bear on, any issue that is or may be in the case.'" *In re*

*New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, 2013 WL 6058483, at *3 (D.

Mass. Nov. 13, 2013) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

"Once a showing of relevance is made, the party opposing disclosure bears the burden of

showing that the requested discovery is improper." *Controlled Kinematics*, 2019 WL 3082354,

at *2.

### B.   Analysis

Defendants failed to produce any responses at all to Jiang's amended request for

interrogatories or his amended request for production of documents.  Instead, they asserted an

omnibus objection to the entirety of each, as follows:

> "Defendants object to the Requests in their entirety on the grounds that they are improper boilerplate requests which are vague and ambiguous, overbroad, unduly burdensome, improperly seek confidential information about Defendants and third parties, are not calculated to lead to the discovery of potentially relevant information, improperly seek information which is protected by the attorney client privilege and/or work product doctrine, and are entirely duplicative of prior requests to which Defendants have responded. Based on these objections, Defendants will not provide substantive responses to these Requests."

(ECF No. 93 Ex. 1, Ex. 2).

That objection—in which defendants accuse plaintiff of making "boilerplate requests"—is itself boilerplate. Furthermore, it is indiscriminate, providing no response to any of plaintiff's interrogatories or requests for production based on a single wholesale objection. While some of the requests may be overbroad or irrelevant, defendants' form of objection is plainly improper. Fed R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."); Fed R. Civ. P. 34(b)(2)(B) ("For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request."); *HealthEdge Software, Inc., v. Sharp Health Plan*, 2021 WL 1821358, at *4 (D. Mass. May 6, 2021) ("[B]oilerplate generalized objections are inadequate and tantamount to not making any objection at all."); *see Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016) ("The objecting party 'must show specifically how each interrogatory or request for production is not relevant or how each question is overly broad, burdensome or oppressive.'") (quoting *Sanchez-Medina v. UNICCO Serv., Co.*, 265 F.R.D. 24, 27 (D.P.R. 2009)).

It is true that some of what plaintiff has requested is overly broad, some is irrelevant, and some is duplicative. But the interrogatories and requests for production appear to contain requests for relevant information. Given defendants' blanket refusal to respond, the Court will

not review the interrogatories or requests for production item-by-item. However, in order to avoid further delays, the Court will not compel responses to the discovery requests concerning businesses other than Tokyo II, potential opt-in plaintiffs, general business data unrelated to the claims in this case, or time-periods beyond the scope of this action, all of which are clearly overbroad. Defendants are directed to provide substantive, particularized responses to the remaining requests, or to file particularized objections if appropriate. To the extent that a request may cover both relevant and irrelevant information, the relevant material must be produced (for example, a request for payment records from all restaurants in which Lin has an ownership stake would require a response providing payment records from Tokyo II, but not from all restaurants).

Accordingly, plaintiff's motion to compel supplemental responses to his amended first set of interrogatories and amended first request for production of documents will be granted in part and denied in part. Defendants shall respond to that discovery, consistent with this memorandum and order, within 14 days (that is, by December 6, 2024). Plaintiff shall also file any request for reasonable expenses under Fed. R. Civ. P. 37(a)(5)(A) within 14 days.

## IV.    **Motion for Conditional Collective Certification**

Section 216(b) of the FLSA permits employees to bring collective actions on behalf of themselves and others who are similarly situated. Plaintiff has moved to conditionally certify a collective action and to allow notice of that action to be sent to all similarly situated employees.

### A.    **Legal Standard**

In addition to creating a private right of action for employees to recover unpaid overtime if their employers violate the FLSA, Section 216(b) also provides employees with the option of bringing a collective action:

> An action . . . may be maintained against an employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated. No employee

> shall be a party plaintiff to any such action unless he gives his consent in writing
> to become such a party and such consent is filed in the court in which such action
> is brought.

29 U.S.C. § 216(b).

Collective actions under the FLSA were "created to promote the 'efficient adjudication of similar claims, so similarly situated employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute claims.'" *Iriarte v. Café 71, Inc.*, 2015 WL 8900875, at *2 (S.D.N.Y. Dec. 11, 2015) (quoting *Lynch v. United States Auto Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007)); *see also Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 58 (1st Cir. 2007) ("The Supreme Court has noted that the FLSA itself is meant to offset the superior bargaining power of employers both for particular employees at issue and broader classifications, and to offset the resulting general downward pressure on wages in competing businesses." (citing *Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 302 (1985))).

Unlike class actions under Fed. R. Civ. P. 23, "FLSA collective actions require similarly situated employees to affirmatively opt-in and be bound by any judgment." *Iriarte*, 2015 WL 8900875, at *2 (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010)). It is well-established that "actions brought for violation of the [FLSA] cannot be brought as [Rule 23] class actions," and instead, "must be brought [as opt-in collective actions] pursuant to the procedures in [29 U.S.C. § 216]." *Trezvant*, 434 F. Supp. 2d at 57.

Where, as here, plaintiffs seek to exercise their rights to bring suit on behalf of others, district courts may facilitate the process of sending notice to others who may be similarly situated. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989). Many courts follow a two-step approach to determine whether to issue such a notice. *See Trezvant*, 434 F.

Supp. 2d at 43; *Darden v. Colbea Enterprises, L.L.C.*, 2024 WL 2025769, at *2 (D. Mass. May 7, 2024).[8]   Under that approach, "the court makes an initial determination of whether the potential [collective] should receive notice of the pending action and then later, after discovery is complete, the court makes a final 'similarly situated' determination." *Trezvant*, 434 F. Supp. 2d at 42.  Plaintiffs here seek an initial determination that notice of the lawsuit should issue to other employees of Tokyo II.

The standard for that initial determination is "fairly lenient" and "typically results in conditional certification of the representative [collective]." *Id.* at 43.  To issue notice, the plaintiffs need only show that there is "some factual support"—a modest factual showing or asserting substantial allegations—that the potential plaintiffs are similarly situated.  *See Melendez Cintron v. Hershey P.R., Inc.*, 363 F. Supp. 2d 10, 16 (D.P.R. 2005) (following the view of "[m]ost" courts that the plaintiff must show "some factual support for the allegations [that others are similarly situated] before [the] authorization of notice"); *Trezvant*, 434 F. Supp. 2d at 43 (defining "substantial allegations" as "detailed allegations supported by affidavits that successfully engage defendant's allegations to the contrary") (collecting cases); *Hipp*, 252 F.3d at 1219.

### B.    Analysis

#### 1.    Conditional Certification

At this initial stage, the determination that the putative collective is similarly situated "is

---

[8] That two-step approach is often called the *Lusardi* test, after *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).  *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021) (discussing and rejecting *Lusardi* test).  There are, however, other standards in other circuits.  *See id.*; *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023).  The First Circuit recently described the conditional certification process as "entail[ing] a 'lenient' review of the pleadings, declarations, or other limited evidence to assess whether the 'proposed members of a collective are similar enough to receive notice of the pending action.'" *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 89 (1st Cir. 2022) (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018); *Swales*, 985 F.3d at 436).

made using a fairly lenient standard, [but] the standard is not 'invisible.'" *Burns v. City of Holyoke*, 881 F. Supp. 2d 232, 234 (D. Mass. 2012). Under some circumstances, plaintiff's lone affidavit purporting to identify co-workers, their hours and pay rates, and asserting that they did not receive overtime pay might support conditional certification of an FLSA collective. However, in this case, the timing of the motion, in conjunction with the general frailty of plaintiff's proffer in support of it, lead the Court to conclude that conditional certification at this point would be improper.

While the factual showing required to support conditional certification is modest, the factual showing made by plaintiff in this case falls at the low end of what might be acceptable. The factual basis of plaintiff's motion consists almost entirely of a single affidavit of his own, listing the hours and pay rates of coworkers based upon his personal observations "during the course of [his] employment." (Jiang Aff. ¶ 30). He provides no basis whatsoever for some of his assertions, (*Id.* ¶¶ 34-38, 157-60); cites discussions with colleagues as a basis for others, (*Id.* ¶¶ 39-44, 60-64, 161-73); claims to have overheard the information contained in others, (*Id.* ¶¶ 71-95, 114-45); and purports to have gleaned the information in the rest from seeing the individuals' names and amounts of pay written on the envelopes they received on pay day, (*Id.* ¶¶ 45-59, 65-70, 95-113, 146-56). Furthermore, his allegations do not detail any of the job requirements or expectations of any of the employees, despite listing individuals with at least nine different job titles. While "the submission of additional affidavits beyond those of the named plaintiffs is not necessary to make a 'similarly situated' showing," that does not mean their absence is irrelevant. *Trezvant*, 343 F. Supp. 2d at 45. The single affidavit, itself asserting relatively bare bases for its claims, not buttressed by any supporting affidavits or additional evidence, makes for a weak showing, even at the notice stage. *See Myers v. Hertz Corp.*, 624

F.3d 537, 555 (2d Cir. 2010) ("The 'modest factual showing' [required at the notice stage]

cannot be satisfied simply by 'unsupported assertions.'") (quoting *Dybach v. State of Fla. Dep't*

*of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)).

Furthermore, the rationale for permitting a minimal showing is weakened by the

comparatively late stage of the case at which this motion for conditional certification is being

considered. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018) ("First, at

or around the pleading stage, plaintiffs will typically move for preliminary certification . . . . The

level of consideration is . . . commensurate with the stage of the proceedings.") (citations

omitted). Rather than coming on the heels of the initial pleadings, plaintiff filed this motion

nearly one-and-a-half years after filing his complaint.

Despite that extended period of time, and plaintiff's allegedly close relationships with the

putative collective members, he has made no showing whatsoever that even a single other

employee has any interest in actually joining the lawsuit. A core purpose of permitting collective

actions is "to serve the interest of judicial economy," *Hoffman-La Roche*, 493 U.S. at 170, and if

the proposed collective members "'decline to opt in to the case, no purpose would have been

served by "certifying" a collective,'" *Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 237

(D. Me. 2011) (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn.

2007). Therefore, "[p]laintiffs must present information, i.e., more than speculation or bald

assertions by the plaintiffs, that putative class members are interested in joining the suit."

*O'Donnell v. Robert Half Int'l, Inc.*, 534 F. Supp. 2d 173, 179 (D. Mass. 2008). No such

evidence has been provided here.

Finally, certifying a collective at this point would lead to an odd situation in which the

named plaintiff and the collective that is supposedly "similarly situated" to him are in fact

litigating matters that occurred during entirely distinct time periods.  In contrast to a Rule 23 class action, the filing of a complaint in an FLSA collective action does not toll the limitations period for opt-in plaintiffs.  29 U.S.C. § 256(b).  Plaintiff did not file his motion seeking conditional certification until nearly a year and a half after filing the complaint.  By the time this Court took the motion under consideration, the (still-running) statute of limitations precluded any opt-in claims arising from activity occurring before September 5, 2021.  Plaintiff left Tokyo II on June 3, 2021.  That means the only potential opt-in plaintiffs with timely claims would be suing based on conduct that plaintiff was not present to directly observe or experience himself.  In addition to potentially posing a unique procedural burden, this disjuncture also further erodes the already weak factual basis upon which he seeks conditional certification.  *See Roberts v. S.B. S. Welding, L.L.C.*, 140 F. Supp. 3d 601, 609 (N.D. Tex. 2015) ("[W]ithout personal knowledge of [d]efendants' compensation policies after he left, [plaintiff] cannot claim to be similarly situated to any individuals who did not work for [d]efendants during the time that [plaintiff] did.").

Ultimately, it is within the Court's discretion whether to grant conditional collective certification.  *Hoffman-La Roche*, 493 U.S. at 171-72.  As the First Circuit has noted, "[c]onditional certification . . . 'is a product of interstitial judicial lawmaking or ad hoc district court discretion . . . nothing in section 216(b) expressly compels it.'"  *Waters v. Day & Zimmerman NPS, Inc.*, 23 F.4th 84, 89 (1st Cir. 2022) (quoting *Campbell*, 903 F.3d at 1100).  Thus, "'certification' is neither necessary nor sufficient for the existence of a representative action under [the] FLSA, but may be a useful 'case management' tool for district courts to employ in 'appropriate cases.'"  *Myers*, 624 F.3d at 555 n.10 (quoting *Hoffman-La Roche*, 493 U.S. at 169, 174).  In light of the weak factual showing, the absence of any demonstrated interest from potential opt-ins, and the complications arising from the late timing of the motion, the

21

Court finds that this is an inappropriate case for conditional certification, and "as a matter of sound case management," denies plaintiff's motion for conditional certification of a collective action under the FLSA. *Burns*, 881 F. Supp. 2d at 234.

**V.** **<u>Conclusion</u>**

For the foregoing reasons, defendants' motion for summary judgment is GRANTED as to the claims against Kobe Japanese Steakhouse, Inc., and DENIED as to the remaining claims; plaintiff's motion to compel is GRANTED in part and DENIED in part; and plaintiff's motion for conditional collective certification under FLSA section 216(b) is DENIED.

Defendants shall respond to plaintiff's amended first set of interrogatories and amended first request for production of documents, consistent with this memorandum and order, within 14 days (that is, by December 6, 2024). Plaintiff shall file any request for reasonable expenses under Fed. R. Civ. P. 37(a)(5)(A) within 14 days (that is, by December 6, 2024).

**So Ordered.**

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV

Dated:  November 22, 2024                    Chief Judge, United States District Court